J. JonNSTON, Ch.,
also dissenting. It may not diminish the force of the observations made by Mr. Justice O’Neall, if I *state very briefly the reasons which induce me to concur in his dissent.
It is admitted that the duties and liabilities between masters and hired servants, result only from the nature and terms of the contract which forms the relation; and that neither party is allowed to extend or abridge the contract. That the master cannot exact other services than those stipulated for; nor, by any indirection, subject the servant to any other than the ordinary perils incident to the employment; and that if he does, by any agency whatever, or by any means, whether of design or negligence, accumulate upon the servant, while in the performance of his duty, any dangers beyond these inherent in the service itself, they fall upon the latter, not as a servant, (for his contract does not bind him to endure them,) but as a man, and the law entitles him to redress.
It is also admitted that these principles are not confined to cases where one servant only is employed, but prevail when a plurality are at the same time engaged by the same master. Their application, however, in cases of the latter description, depends upon the terms of the contract. If several jointly contract to perform a specified duty, the master is not liable to either of them for injuries resulting from the faithlessness or negligence of his coadjutor; all of them being, substantially, agents for each other, to perform their joint undertaking. But when their engagements are several, each undertaking for himself, to perform distinct offices, in a matter susceptible of a division of labor, each stands to the master in the same relation, and is entitled to the same rights, as if he was the only servant employed. The master is responsible to him, as he would be to a stranger, for the misconduct of the others, who are exclusively his, the master’s, agents.
Now, this is admitted to be the general law upon the subject; and it is applicable to the servants of a railroad company, as well as to those *266 of any other employer, unless there be something to take them out of its operation.
No instance of master and servant has been pointed out where these principles do not obtain, except the case of a ship’s crew; but that stands clearly upon special grounds of usage.
If the servants employed about a railroad, are excepted out of the general rides relating to agency, the exception, with the '-•'grounds and reasons of it, must be shown, otherwise the employers will be as liable to any one engaged in their service, for injuries inflicted on him by other agents, in the course of their employment, as a planter would be to a hired hand for maltreatment by his overseer.
I presume no one will contend that the rule applicable to service in a railroad company, is, that the company is not liable to any agent, for any injury, provided the company can only show that another of its agents has inflicted it. Would it do to say, for example — and upon what principle could it be said — that a superintendent of the hands engaged in repairing the road, may, with impunity to the company, abuse his authority, to the injury of their health ? Or, if the cars were to be run at night, and, through the neglect of hands set apart to watch the road, and remove obstructions, the whole train were lost, and any officer or hand on board were crippled, certainly no one moans to assert that none of these could claim compensation from the company, but must look exclusively to the irresponsible agents (perhaps slaves,) hired by the company, through whom the injury accrued ? And yet, how is the rule to be laid down — -I wish to hear the rule stated — which would include that case and exclude this. The fidelity of the hands detailed to superintend the road, in the case I have supposed, would be as essential to the common enterprise of running the cars, as the fidelity of the hands on board to their respective duties. If the idea is indulged, that there is, in any branch of this enterprise, an implied undertaking among the servants to do the work jointly, and to waive the neglect of each other, what will constitute such an understanding ? Where are its limits ? Does it arise from the intimate connection of the hands ? Then, I wish to be informed what degree of intimacy, what strength of association, is demanded, to raise the implication ? Where is the line ?
I give no opinion upon the evidence. I take the verdict for the facts ; and, according to the finding of the jury, the plaintiff faithfully performed his particular duty, and, while performing it, was injured by the faithlessness or negligence with which the company, acting in the person of another agent, executed a duty incumbent upon them. Ought the plaintiff’s remedy to be doubtful ?
*The elements of the contract between him and the defendants, are these : on their part, so far as they were to contribute to the propelling of the cars, that they would carry him safely ; and, on his part, that on the trip he would perform certain offices. With respect to the last, he was their servant; with regard to the first, he was their passenger; and as their passenger, they have crippled him. The distinction is plain, and the propriety of applying it would be as plain, if instead of being stationed where he was, he had only been a clerk, hired by the company to travel up and down in the cars, and take a minute of their operations. Yet, on principle, no discrimination can be drawn against *267 him on account of his being a fireman, and not travelling clerk; because he had ns little connection with, or control over, the department from which his injury sprang, or the agent to whom it was exclusively committed by the defendants, as if he had been assigned any imaginable duty in the remotest part of the train.
Note. — This case was argued before the present incumbent was elected to the office of State llejiorter, which will account for the want of the usual notes of the argument of counsel. He has been furnished by his Honor, Judge Richardson, with the argument of Col. Standing, submitted by him, in his life time, to the Appeal Court, which he has published with the case. The Reporter regrets, exceedingly, that he has not been furnished with the eloquent arguments (as lie has been informed they were,) of the different counsel who were engaged in this case.
See 9 Rich., 93, 468; 4 Rich., 426; 5 Rich., 15; 1 Strob., 525, and other cases concerning passenger carriers. An.